Seaton v. Ruff.

## RICHARD SEATON

v.

## HENRY RUFF.

*Replevin—Chattel Mortgage—Transfer of Mortgaged Property—Evidence—Instructions—Estoppel—Practice.*

1.    Where a mortgagee takes possession of mortgaged chattels under the mortgage, he holds the legal title, and may lawfully sell at private sale, being responsible to the mortgagor for any omission to comply with the terms of the mortgage.

2.    In an action of replevin brought to recover property which had been levied upon after foreclosure and sale, as the property of the mortgagor, this court declines to interfere with the verdict for plaintiff, there being no sufficient evidence of fraud.

3.    After the foreclosure of a chattel mortgage, the employment of the original owner to take charge of it does not of itself raise a presumption of fraud.

4.    An assignment of error which is not noticed in the brief, will be considered as waived.

[Opinion filed November 23, 1888.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. J. C. BROADY, for appellant.

Messrs. EMMONS & WELLS, for appellee.

WALL, P. J.    This was replevin by appellee against the appellant.    The pleas were property in a third person, *non*

*detinet*, and that defendant, as sheriff, had levied upon the property by virtue of an execution against one James U. Balthorpe, the then owner of the property. The plaintiff took issue on these pleas, and upon a trial by jury the finding was for plaintiff, upon which a judgment was entered.

The evidence tended to prove that said Balthorpe and one Bushnell, as partners, being the owners of the chattels in question, consisting of sundry horses, carriages, buggies and other vehicles, with the harness, robes, etc., pertaining to the same, in a livery stable on Hampshire street in the city of Quincy, on the 30th of June, 1884, executed a chattel mortgage thereon to secure the payment of a promissory note for $2,600, due six months thereafter, to L. and C. H. Bull, bankers in said city.

The mortgage was properly acknowledged and recorded. On the 23d of September following, said L. and C. H. Bull transferred the note and mortgage to John H. Duker for the consideration of $2,500. Duker took immediate possession of the property and put his agent in charge of it, and on the next day sold the property to the appellee, Henry Ruff, giving him possession. Ruff put the property in charge of his agent, and causing the name of Balthorpe & Bushnell to be "painted out" of the sign, he posted up a notice in the office that he was the owner of the property. This action of Duker in taking possession and selling to Ruff was by virtue of certain provisions of the mortgage which it was claimed authorized such proceedings. Ruff retained possession by his said agent for some three months, when he employed Balthorpe to act in that capacity. The business was carried on as usual and Balthorpe seems to have had charge and management from that time forward. He did not claim to be the owner, although the building occupied on Hampshire street was leased in his name, and afterward he leased another building on Vermont street to which the property was removed. He received a salary for his services, and this, together with the other expenses, was paid out of the earnings, so far as the latter were sufficient. In October, 1885, Ruff sold all the property on credit to one Hatcher for $3,600, and took his

note, secured by a chattel mortgage, to secure the debt. When this note matured, in May or June, 1886, Ruff gave notice of sale, and Hatcher, to save expenses, surrendered the property to Ruff, who thereafter claimed to own it and had possession, Balthorpe acting as his agent.

In December following the levy was made, under an execution issued December 16th, upon a judgment rendered December 6th. It is urged that the proof shows that the property all the while belonged to Balthorpe, and that the various transfers were merely colorable.

There was evidence tending to prove that Balthorpe was a great part of the time exercising such control and authority as to dispel the idea that he was only an agent, and these circumstances it is insisted are conclusive against the position of the plaintiff.

There seems to be no good reason to doubt that the debt for which the mortgage was originally given was *bona fide*, and that the transfers to Duker and Ruff were not with any fraudulent or improper purpose. When a mortgagee takes possession of mortgaged chattels pursuant to the provisions of the mortgage, he will hold the legal title. Being so vested and having possession, he may lawfully sell the property at private sale, being responsible, however, to the mortgagor for any injury sustained by him by reason of omission to comply with the terms of the mortgage. The mortgagor may waive all right to complain, and by his action may be estopped to say that the sale was not made pursuant to the power contained in the instrument. In such case the title of the purchaser can not be assailed by the mortgagor, nor by his creditors who have no lien upon the property at the time of the purchase.

It is not important to inquire whether the mortgagee in the present instance had sufficient grounds for taking possession, or whether the sale was authorized by the terms of the mortgage, for the plain reason that the only persons who had at that time any legal right to object—to wit, the mortgagors—acquiesced in it and waived all objections they might have interposed. McConnell v. The People, etc., 84 Ill. 584; Jones on Chattel Mortgages, chapter 16.

The fact that Balthorpe was employed as agent of the mortgagee after foreclosure, while it is a circumstance to be considered, is by no means conclusive against the good faith of the transaction. Indeed, it does not necessarily raise a presumption of fraud. It may be consistent with the most perfect good faith. Brown v. Riley, 22 Ill. 45; Read v. Wilson, 22 Ill. 377.

The circumstances of the sale to Hatcher, who was a man of no means and was a relative of Balthorpe, are urged as strongly indicative of fraud.

It was testified by Hatcher that he expected to get money from a claim he had in litigation in Missouri when he made the purchase, but was disappointed.

It is probable that Ruff was anxious to dispose of the property, and was willing to sell to any one who had a reasonable prospect of being able to pay. Ruff bought the property originally because he held a claim of $400 against Balthorpe. He frequently paid out money on account of it while he had it. It was assessed in his name and he kept it insured, and when it was destroyed by fire, after this suit was begun, he collected the insurance. After a careful reading of the evidence as it appears in the abstract, we think there is no good reason to set aside the verdict so far as the facts are concerned, and that there was no error in denying a new trial upon this ground.

The assignment of errors questions the ruling of the trial court in giving and refusing instructions, but in the brief there is no reference to this point. We are, therefore, not advised of the reasons for this assignment. It is our practice to consider as waived or abandoned an assignment of error which is not noticed in the brief, and in the present instance we so regard it.

No other point is urged, and the judgment will be affirmed.

*Judgment affirmed.*