## Union National Bank of Chicago, David Kelley and John J. P. Odell v. Alfred Post, for the use of Francis A. Riddle.

1. PARTIES—*Actions for the Use of Another.*—The fact that an action is brought for the use of another, does not extend the plaintiff's rights. Bringing an action thus is permitted only for the purpose of protecting the equitable interests of the assignee of a chose in action or judgment, when such assignee is not allowed by law to sue in his own name.

**Memorandum.**—Trover. In the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Declaration in trover and plea of the general issue; trial by jury; verdict and judgment for plaintiff; appeal by defendants. Heard in· this court at the October term 1894. Reversed and remanded. Opinion filed November 12, 1894. ·

GREEN & ROBBINS, attorneys for appellants.

LEWIS H. BISBEE and THOMAS CRATTY, attorneys for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The appellee, for use of Francis A. Riddle, brings this suit for the. alleged conversion by the appellee of the note for $25,000, dated September 14, 1888, payable one year after date, made by James J. West, which was the subject of controversy in Kelly v. Post, 37 Ill. App. 396.

The facts as to the various exchanges of notes, as there narrated, appear in this record, except that it now appears that the note of the Chicago Times, there mentioned, was for $25,750, and was dated March 16, 1889. It now appears by the testimony of Odell and West both—the only persons who could know about it—that nothing was said between them as to one note being in, or accepted as, payment of the other. It thus appears that Odell at all times held the note of the same party, and only the same party—for the Chicago Times was not bound by a note made by its president to himself, for his own benefit—and for the same amount—for the $750 of the Times note was the interest for the time between the dates of that note and the first note, for the same indebtedness.

The appellee does not now· claim that the various exchanges, of themselves, amount to a conversion of the first note.

His brief says that " the only question now before this tribunal is as to whether or not the evidence submitted to the jury tending to show that the appellee had a right to recover upon other grounds than the mere exchange of collateral, was sufficient to sustain the verdict returned in this cause."

In that brief the first note is called the " West-Munroe " note because it was made payable to Munroe. He indorsed it " without recourse."

Quoting further from that brief:

" On the 29th or 30th of April, 1889, Riddle received a letter from Post, the' postscript of which contained the following:

"Riddle: It is understood between us that one-half of the $9,000 still due on the J. J. West note was to be paid to you ($4,500) in consideration of services rendered by you. That amount you are hereby authorized to take, holding balance in trust for me, and when I can collect outstanding money you shall be paid more.

Alfred Post."

On the 29th or 30th of April, 1889, Mr. Riddle showed that postscript to Odell, then vice-president and acting president of the Union National Bank, and at that time had a conversation with Odell respecting the surplus of $9,000 in the $25,000 note which Post had deposited as collateral security to the principal note of $16,000. At such interview Odell informed Riddle that West had, prior to the date of that interview, taken up the original collateral note which Post had deposited and had given in its place a note of the Chicago Times Company for $25,000. That the note so made by the Chicago Times Company had been guaranteed by West; that the reason which West had for taking up the West-Munroe note was because he was particularly anxious that it should not be outstanding, and that certain unfriendly influences and persons were trying to give him (West) trouble by reason of such West-Munroe note.

It further appears that in June, 1889, after Post had returned, he executed to Riddle a bill of sale, in the nature of a chattel mortgage, of certain horses and other personal property, to secure Riddle in part for certain advances of money made by him in the settlement of certain attachment suits which had previously been brought against the horses and property of Post, and also to secure Riddle in the payment of fees and services rendered and to be rendered. That

after the 28th day of May, 1889, Riddle, relying in part upon the assignment contained in the postscript to the letter before mentioned, and the assurance of Odell that the surplus in the $25,000 West-Munroe note, so assigned, was then in the possession and control of the bank, and in part on the bill of sale of the horses and personal property of Post, advanced for Post's account at various times prior to July 18, 1889, in all the sum of $6,746.21, a part of which, and all but about $3,400, was refunded to Riddle prior to July 18, 1889.

It further appears that a controversy arose between Post and Riddle; that on the 24th of June, 1889, Post wrote the following letter:

"June 24, 1889.

J. J. P. Odell, Esq., Vice-President Union National Bank, Chicago, Ill.:

DEAR SIR: Any moneys you may now or hereafter hold yourself, or as an officer or agent of the bank for me, you will please not pay over to any one but to me personally.

Yours truly,

ALFRED POST."

That on the 28th of June, 1889, Odell presented the letter last above recited to Riddle in his office, and there and then had a conference and conversation with Riddle respecting such letter or order, and respecting the surplus of the $25,000 collateral note which had been deposited with the bank by post.

The abstract states the testimony of Riddle as to the conversation with Odell, much stronger than the above summary in the brief, and Odell in his testimony denies all that Riddle says, which goes beyond the brief.

If the case were to be decided upon what was said in that conversation, the verdict of the jury would be a settlement of the conflict in the testimony. But this is an action brought by Post. His rights depend upon the real facts, not upon any estoppel, supposed or real, in favor of Riddle. The action being for the use of Riddle does not extend Post's rights.

The only effect of "the use" is as notice to the opposite party not to deal with the nominal plaintiff. Boone v. Stone, 3 Gil. 537.

The real fact is that in the exchange of the West-Munroe note for the Times note, there was no agreement as to what should be the effect of that exchange. And as we said in Kelly v. Post, 37 Ill. App., at page 399, "human ingenuity can not explain how any injury could have resulted to anybody by the exchange between Odell and West."

If it be true that in consequence of what Odell said to Riddle, the latter extended to Post pecuniary assistance which, but for what Odell said, would not have been extended, Post has more cause to give thanks to Odell than to complain of him.

The judgment is reversed and the cause remanded.

Judge Shepard takes no part in this case.

Mr. Justice Gary on petition for rehearing. Filed December 20, 1894.

The original brief of the appellee, not by any misstatement, but by so slightly alluding to the most serious question in the case, and so strenuously insisting upon reasons for affirming the judgment upon other grounds, so misled us that that question wholly escaped our notice.

As the original opinion quotes, that brief said that "the only question now before this tribunal is as to whether or not the evidence submitted to the jury tending to show that the appellee had a right to recover upon other grounds than the mere exchange of collateral, was sufficient to sustain the verdict returned in this cause." The fact, always apparent on the record, and in the brief of the appellee, has now for the first time reached our minds, that the note of the Chicago Times was payable September 24, 1889, while the notes made by West, only matured September 14, 1889, so that there was an extension of ten days in the time of payment when the "Times" note was taken. On the trial, and in the brief here, that extension of time was

relied upon as one of the circumstances upon which the
jury should find that the "Times" note was entered and
accepted as absolute payment of the first note, though it is
true also that the brief did contain on the 37th, of 59 pages,
this:

" The Times-West note extended the period of payment
for the original collateral note, and in such a case the cred-
itor thereby makes it his own.

The doctrine in such cases is accurately stated in Jones
on Pledges, Ed. of 1883, Sec. 719.   The rule laid down by
Jones, *supra*, and the cases cited by him, leave no room to
doubt that as a matter of law the appellants in the present
case appropriated and made their own the West-Times note
for $27,500."

Nowhere, however, in the briefs, are the dates of the ma-
turity of the notes brought into juxtaposition, and the point
made in connection therewith, that there had been an ex-
tension of ten days for the time of payment, and therefore
the legal consequence followed, which, if true in point of
law, would have dispensed with any reference to the jury
of the question whether the "Times" note was a satisfac-
tion of the "West-Munroe" note.   And so oblivious were
the appellee, himself a practicing lawyer, and his counsel, of
the significance of this fact, that in the declaration, which
is special, stating circumstances, and closing in each of the
three counts with an allegation of conversion, the "Times"
note is twice described as dated September 14, 1888, and
payable one year after date, and not otherwise.   Yet I say,
*mea culpa;* the brief did make the point with so much
of directness that the doctrine of Chicago City Ry. v. Van
Vleck, 143 Ill. 480, as to the insufficiency of briefs, does not
apply.

Now, as to the effect in law of the "Times" note.   The
"West-Munroe" note belonged to Post and was collateral
to a note made by Post, with Riddle as surety, to the bank,
for $16,000, dated February 12, 1889, and due in ninety
days.

The contract of pledge was such as the law implies, none

Union Nat. Bk. of Chicago v. Post.

express being made. Under such contract the bank was bound, if the $16,000 note was paid; to surrender the "West-Munroe" note, or pay what might be the actual damages resulting from failure to surrender. Whatever the bank might do with the "West-Munroe" note, while the $16,000 note remained unpaid, Post could maintain no action based upon any right to possession of the collateral—such as detinue or trover. Donald v. Suckling, L. R., 12 B. Cases (1866) 585; Holgate, L. R., 3 Exch. Cases (1868) 299. The $16,000 note has not been paid by either Post or Riddle; unless satisfied by the transactions in connection with notes made by West, it is still in force. Now if Post can maintain any action it must be either of assumpsit upon the contract, or case upon the duty implied by law. He has chosen the latter; and it is an essential, indispensable element of that action, that Post should have been injured. It is the duty of a servant to be truthful to his master about his master's affairs, but if the coachman of a widow tells his mistress that she may safely ride out, as the horses are sharp shod and won't slip, when in fact there are no corks on the shoes, but the ground being dry and soft, none are needed, can she sue?

It has been already decided by this court in the case cited that these several exchanges of notes did Post no injury.

True, the ten days extension of the time of payment was not shown them, but how can Post be harmed by that since the original note has got back to the pledgee? What the pledgee does harmlessly with the pledge before the pledgor can have any use for it, ought to be no concern of the pledgor. If the thing is ready to be restored, as the contract or duty requires, that should be sufficient. Coggs v. Bernard, 2 Ld. Raym. 909.

We therefore regard that ten days extension as immaterial, in the present aspect of the case.

We have long been familiar with the modern recognition by courts of law of equitable ownership of the cause of action sued upon in another than the nominal plaintiff; and the consequent rejection by such courts, of defenses growing

out of transactions between the plaintiff and defendant, after the latter had notice of such equitable ownership. But no case has ever held that a plaintiff suing for the use of another could recover upon a cause of action which he never had, because of anything which had happened between the usee and the defendant.

The petition for rehearing teaches us nothing upon the subject, nor does it convince us that the president of a corporation, whatever the state of accounts between him and the corporation, may make the note of the corporation to himself, and confer upon another, who takes for the debt of the president, a good title. The appellee has no case so far as it is yet shown, and the petition is denied.