## John G. Earle v. Clara M. Earle.

1. SEPARATE MAINTENANCE—*Nature of the Remedy.*—The remedy of a wife who is living apart from her husband without her fault is provided for by statute, giving her relief against her husband to the extent of a reasonable support and maintenance, according to the conditions and circumstances in life of the parties, and allowances for expenses and solicitor's fees to enable her to prosecute her suit.

2. SAME—*Alimony, etc.—Not a Matter of Right.*—It is not a matter of right under all circumstances for the wife, who has commenced suit for separate maintenance, to have allowances for alimony, suit money and solicitor's fees; these must rest upon the sound discretion of the court and should depend upon its being made affirmatively to appear that the wife has a meritorious cause, is proceeding in good faith, and that it is just and equitable within the meaning of the statute, that the allowance should be made.

3. PRACTICE IN CHANCERY—*Verification of the Bill.*—A verification of a bill in chancery which states that the complainant has read, or heard read, the bill of complaint and knows the contents thereof, that the same are true of his own knowledge, except as to matters therein stated

on information and belief, and as to those matters he believes it to be true, is insufficient upon which to base such action as can only be taken upon verified pleadings.

Separate Maintenance.—Appeal from the Circuit Court of Cook County; the Hon. Thomas G. Windes, Judge, presiding. Heard in this court at the October term, 1895. Reversed. Opinion filed October 31, 1895.

H. S. Mecartney, attorney for appellant.

W. S. Forrest, M. Rosenthal and M. D. Coffeen, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the Court.

This bill is for separate maintenance; and by decree entered February 27, 1895, the appellant was ordered to pay to the appellee, as alimony *pendente lite*, the sum of two hundred dollars a month, counting from the first day of January, 1895, six hundred dollars of which, for the months of January, February and March, was directed to be paid on or before March 1, A. D. 1895, and from thenceforward two hundred dollars a month was directed to be paid on the first day of each and every month thereafter; and to pay to the appellee or her solicitors the further sum of five hundred dollars as suit money, and the further sum of seven hundred and fifty dollars as solicitor's fees, within five days from the date of said decree.

The appeal is from that order.

The assigned errors go to the root of the relief sought by the bill, and attack the order on the broad ground that the appellee has not shown that she has probable cause for maintaining her suit.

The remedy for a wife who is living apart from her husband without her fault, is provided for by our statute upon the subject, which gives her relief against her husband to the extent of a reasonable support and maintenance, according to the conditions and circumstances in life of the parties, and allowances for expenses and solicitor's fees to enable her to prosecute her suit.

But it is not a matter of right under all circumstances for the wife, who has commenced suit for separate main-tenance, to have allowances for alimony, suit money and solicitor's fees.  Such must rest upon the sound judicial discretion of the court in which the bill is pending, and the exercise of such discretion should depend upon its being made affirmatively to appear that she has a meritorious cause and is proceeding in good faith, and that it is just and equitable, within the meaning of the statute, that the allowance should be made.  Harding v. Harding, 144 Ill. 588; Wooley v. Wooley, 24 Ill. App. 431; Foote v. Foote, 22 Ill. 425; Wheeler v. Wheeler, 18 Ill. App. 330; Jones v. Jones, 2 Barb. Ch. 146; Worden v. Worden, 3 Edwards' Ch. 387.

The appellee filed her original bill in May, 1894, and it is there represented that she was married to the appellant on December 9, 1885, and that she lived with him as his wife from that date until December 4, 1893, and that during all that time she treated him as a faithful and loving wife; that on December 5, 1893, the appellant abandoned and deserted her and has ever since absented himself without cause; that since said time of abandonment and desertion she has not seen the appellant; nor has any communication passed between them; that the appellant was then, at the time of filing said bill, sixty-three years of age, and that appellee was about forty years of age, and that since December 4, 1893, the appellant has wholly neglected and refused to provide for her support and maintenance, and that she has no property or income of her own, and is dependent upon the charity of friends for support, and is without means to prosecute her suit.

The appellee then sets forth descriptions of large quantities of real estate owned by appellant, and various contrivances on his part to defraud her of her rights therein, and to support therefrom, and asks relief accordingly, and that she may be decreed a proper and suitable provision for her separate maintenance and support, and for allowances for expenses and solicitor's fees in her said suit.

Earle v. Earle.

The appellant answered said bill, admitting the marriage, but denying the desertion on the day charged, or at any other time, and alleging that he had at all times since the marriage and up to the time the bill was filed, maintained and supported the appellee. The answer further denied all unfairness by appellant in the matter of conveying away his real estate, and denied that appellee was entitled to the relief prayed for.

Amendments to her bill were filed July 16, 1894, wherein cruelty and adultery, in addition to the desertion charged in the original bill are alleged, and on July 30, 1894, the appellee filed her sworn petition for allowance *pendente lite* for alimony, solicitor's fees and suit money.

No rule was entered requiring the appellant to answer the bill as amended, but on September 15, 1894, he filed a general demurrer thereto, which was undisposed of when the order complained of was made. The order appealed from rests upon the verified petition for alimony, etc., filed by appellee, July 30, 1894, and the affidavits filed in support thereof.

The verifications of the bill and amendments are insufficient to entitle any allegation of fact therein to be considered as amounting to more than an allegation upon information and belief.

That to the amendments, which is substantially like that in the original bill, is as follows:

" Clara M. Earle, being duly sworn, upon her oath says, she has read, or heard read the foregoing amendments to her bill of complaint, and knows the contents thereof, and that the same are true of her own knowledge, except as to matters therein stated on information, and as to those matters she believes them to be true."

Such a verification has been repeatedly held to be insufficient to base such action upon as can only be had on verified pleadings. Werner v. First National Bank, 55 Ill. App. 321, and prior cases there referred to.

The petition is set forth in the abstract of record as follows:

" The complainant, Clara M. Earle, represents that she has lately filed her bill of complaint and amendments thereto, against John G. Earle, to obtain a decree of separate maintenance.

In which said bill and amendments, petitioner charges said John G. Earle with cruelty and adultery, and shows that she is now living separate and apart from said John G. Earle, and has been so living since December 4, 1893, which bill and amendments thereto petitioner prays may be made a part of this petition.

And further shows that said John G. Earle has entered his appearance in said suit and filed his answer to said original bill, denying under oath the allegations of said bill.

That said John G. Earle, in pursuance of his wicked schemes to render your petitioner penniless and utterly helpless, willfully, on December 4, 1893, left his place of abode in the city of Chicago, and secreted himself from your petitioner for a long period of time for a purpose to petitioner then unknown.

That he thereafter went to the State of Florida, where he remained for four months, after which he secretly returned to this city, April 10, 1894, and concealed his presence in the city and whereabouts, from the knowledge of your petitioner until May 12, 1894, on which day your petitioner filed her bill in this suit, and petitioner shows that said Earle, immediately upon learning that petitioner had filed said bill, wherein she had set forth as ground for her separate maintenance, the said desertion of your petitioner by said Earle, falsely protested that he desired petitioner to live with him again, and in pursuance of said deceitful purpose on May 13, 1894, he, in company with a lawyer named Browne, and a real estate agent named McDonald, at ten o'clock A. M., drove in a closed carriage to within two blocks of the house of said Earle, wherein your said petitioner was then living, and that said McDonald then went secretly to the rear of said house, while said Earle and said Browne entered said house on the front, without any notice whatever to your petitioner, after five months' ab-

sence of said Earle; that petitioner was in her bed chamber; hearing a commotion below and being informed who it was, became greatly alarmed and overcome with fright and fainted.

Said Earle violently forced open the door and with said Browne entered her bed chamber, and caused her to endure the presence of Browne, a total stranger to petitioner, in said room, and that then and there said Earle approached said petitioner, and in an excited manner pretended that he was going to Arizona to reside, and incoherently uttered the following: ' Clara, I have come for you; I am going out west to Arizona to live, right away, and I want you to go with me; I want you to say right now if you will go or not,' and other words of similar import. But your petitioner ordered her servant to call her solicitor, and said Earle left the house with said Browne to where their carriage was waiting them, causing great scandal and ridicule among the neighbors.

Said McDonald, in pursuance of the scheme of said Earle, entered said house falsely, pretended ignorance of the purposes of said Earle, and protested friendship for your petitioner, when in fact he was then and there acting as a spy, in the interest of said Earle, to cheat and defraud your petitioner, and that he the next day did report to Earle, among other things, a certain conversation between your petitioner and her solicitor, which, as her supposed friend, he was permitted to hear, and the day following, the said Earle with the said McDonald again returned to said house, which so frightened your petitioner that she fled in terror therefrom, and has resided elsewhere ever since, and her present abode is the Auditorium Hotel in this city, where she has resided with her maid, and said Earle has continued to reside in said house, keeping with him the said McDonald.

Your petitioner further shows that since December 4, 1893, said Earle has wholly neglected to provide for the support and maintenance of your petitioner, and further, that on May 25, 1894, on demand of your petitioner for the payment of her separate money and estate, the said Earle

paid her, on account of her separate estate, the sum of two thousand dollars, all of which sum has already been expended by your petitioner for her support, and the preparation of this suit, and your petitioner is now dependent upon the charity and liberality of her friends.

Petitioner further shows that in the preparation of this suit investigations were conducted at points far distant from this city, and on account of complications in which said Earle had placed his estate, great difficulties were encountered and expenses incurred in ascertaining the true condition and securing evidence thereof, on account of which she has expended an amount exceeding the sum of twenty-five thousand dollars, including the sum of five hundred dollars paid as retainer's fee to her counsel and solicitor.

That further, the said Earle has ample means for the above mentioned purposes, and is a man of great wealth.

That your petitioner is now and has been for a long time under the care of a physician, being in poor health, the result, as she believes, of the abuse and cruelty of said Earle, and further, that considering the circumstances and condition in life of her said husband, and his great wealth, the proper and suitable support and maintenance of your petitioner exceeds the sum of sixteen hundred dollars ($1,600) per month.

That said Earle may by the order of this court be required to pay to your petitioner such sum for her support and maintenance, during the pendency of this suit, and also such sums of money as may be necessary to enable her to properly prosecute her suit," etc.

Subscribed and sworn to by appellee, July 20, 1894.

It will be observed that the petition makes reference to numerous acts of appellant that took place subsequent to the filing of the bill.

In support of her said petition the appellee filed affidavits by herself, and others in her behalf, but it is only in her own affidavit that any additional facts can be found, concerning the charges upon which her right to any relief must rest.

Without such a showing of probable cause by appellee as would, if not denied, afford ground for relief to her, all questions concerning the property of the appellant are immaterial. And on that account we also do not consider it necessary to take notice of the numerous affidavits filed by appellant, made by himself and others in his behalf, in answer to the petition and affidavits filed by appellee, further than to say that in his affidavit he denied all the charges of appellee which in any way affect her right to relief.

An inspection of the transcript of the record shows that the appellee states in her said affidavit in a vague, inferential or argumentative way, that all of the allegations contained in the original bill, and in the bill as amended, are true, but the statement as made does not amount to a sufficient verification of either the bill or amendment.

The statement is as follows:

"That in so far as the said affidavit of John G. Earle is inconsistent with or repugnant or contradictory to the several statements and allegations contained in her original bill of complaint, in her amended bill of complaint, and in her petition for temporary alimony and solicitor's fees, each and all of the said statements and allegations in said original bill of complaint, amended bill of complaint, and in her petition, are true in substance and in fact, and the said affidavits of said Earle, and the allegations and statements therein contained, untrue and false."

We regard such an attempted verification of former pleadings as manifestly insufficient.

But even though sufficient, we are, nevertheless, constrained to regard the material allegations of the amendments concerning appellant's adulteries, made as if within the knowledge of the appellee, as so improbable when considered with her subsequent conduct and her former pleading, as to cast suspicion upon the good faith of the appellee in making them. Fryrear v. Lawrence, 5 Gil. 325.

Appellee's affidavit, filed in support of her petition, so far as it is applicable to the preliminary question of whether she is entitled to any of the relief prayed, is stated in the abstract of record as follows:

"Affiant denies the statements of Earle to the purport that his absence from his former home for five months prior to the filing of this bill, was to attend to private business, and that he had no intention of deserting this affiant.

But, on the contrary, that before going away Earle secretly removed all his private papers and personal effects from his home, and that prior to such removal said Earle had his business office in said home where he kept his business papers and books; that from said office he secretly removed same.

That he also took away his personal wearing apparel, clandestinely, from his home. That he did, on or about the day of his said desertion, secretly cause to be recorded pretended deeds of conveyance, to a great many different properties, and to many thousand acres of land.

Further, that when said Earle left his domicile on December 4, 1893, he did not inform affiant where he was going, except that he told her that he was going to some place in Indiana to get a witness in a law case; that on leaving he kissed her, and told her that he would return the next day, and that it is not true that he went to or intended to go to Indiana, but that he went to the Brevoort House in Chicago, where he stayed over night, and the next day he went to the State of Florida.

That not returning the next day, as he had promised, nor indicating anything concerning his whereabouts, affiant became alarmed in view of his unexpected absence, and has several times called upon John M. Oliver, her confidential adviser; that the first direct knowledge she was able to obtain of the said John G. Earle was about the first of January, 1894, when said Oliver exhibited to her a letter, which he had received from the said Earle, written by the said Earle with the design that said letter should be shown to affiant. The purport of said letter is:

Yours of December 19th came to hand, and I note what you say. You are a friend of both parties; I can trust you if she can, and try to come to an understanding of separation. She does not love me; has no faith in me; can never live together again. I confide in you as friend of both; if

Earle v. Earle.

you can not mediate between us, send this back to me, and I will hire other lawyers; I send you this as my counsel, and not as one acting against either of us. I want to do what I can; if others are unreasonable I will do nothing. You can see her and answer soon; I can not be forced to do anything; what I do, I do of my own accord. She has cared nothing for me for years, if she ever did, which now I doubt.

(Signed) J. G. Earle.

Addressed to J. M. Oliver, dated December 22, 1893.

Further, that a few days thereafter Earle wrote to Oliver, referring to letter above set forth: 'I thought I had written on domestic affairs plain enough. After this I will be more careful what I write. You say she has not any other lawyer; don't be too sure; she is liable to take one up at any time.'

Further, that after December 4, 1893, said Earle did not communicate with affiant, and made no explanation to her of the cause of his absence, except as hereinbefore stated, and except for alleged reasons contained in said letter; that said Earle remained in Florida until about April 10, 1894, when he secretly returned to Chicago, then and thereafter concealed his presence from affiant in a certain hotel on North Clark street, next to Westminster Hotel, for four weeks, during which period he did not visit affiant, nor return to his place of abode, nor offer to her, either by letter or otherwise, any explanation of his conduct.

That affiant's bill was filed Saturday evening, about five o'clock, of May 12, 1894, summons issued instanter thereon, and given to a special deputy to serve upon said Earle. That said deputy went immediately to said hotel to serve said Earle, but that said Earle fled out by the rear door of said hotel, and escaped a few minutes prior to the arrival of said deputy, thus avoiding service of said summons until he could learn the nature of affiant's bill.

That on the second day thereafter the said Earle returned in company with one McDonald, who took up his abode

with said Earle in the place and home before occupied by this affiant.

And further, that from December 4, 1894, said Earle never sent this affiant any money, or means wherewith to live, but affiant admits that she did obtain credit from various parties for groceries and necessaries of life. As to whether all bills for necessaries and comforts of life have been paid by said Earle, she is not informed. That affiant was compelled to employ detectives for months, to send them to distant States, and to employ competent persons to search records, examine titles in many counties of several States and in the city of Chicago, to discover and prove ownership of numerous tracts of lands, to have competent attorneys in Chicago and other places, and able counsel to properly prepare and present her suit. By reason of said expenses affiant is now indebted to a large amount and is destitute of means whereby to prosecute this suit.

Affiant states that the money which she received from creditors of said Earle, subsequent to desertion of affiant by said Earle, amounting to the sum of $284.25, was expended by affiant in the expenses of procuring evidence and preparation of this suit.

Further, that there remain amounts due and unpaid for necessary expenses, in procuring evidence and preparing same, for affiant's personal expenses, and that said Earle should be ordered to pay the said unpaid expenses, consisting in part of the following:

| | | |
|---|---:|---:|
| Hotel bill for board | $ 308 | 00 |
| Wearing apparel | 321 | 89 |
| Wages, maid servant | 120 | 00 |
| Physician's services | 50 | 00 |
| Services of detective agency in Chicago and other places | 1,274 | 61 |
| Balance clerical work | 55 | 00 |
| Balance stationery | 30 | 00 |
| Attorneys | 200 | 00 |
| Total unpaid accounts | $2,350 | 00 |

Subscribed and sworn to January 5, 1895."

The charge of desertion being the only charge made in the petition and affidavit of appellee, we may, in the absence of a verification of the bill and amendments, look only to the petition and affidavit, to ascertain if there is therein presented a good faith and meritorious cause from which it may be seen that the order appealed from is just and equitable, and that must be determined with reference to the time the bill was filed. If appellee had no good cause at the time she filed her bill, her case as here presented must fail.

It is indispensable to the maintaining of a bill for separate maintenance that, at the time of beginning the suit, the wife should be living separate and apart from her husband.

The cause of the appellee living separate and apart from the appellant consists, therefore, in the alleged desertion by the appellant of the appellee, commencing on December 4, 1893, and continuing up to the time the bill was filed on May 12, 1894.

When on December 4, 1893, the appellant went away, and prior thereto, the parties were living together as man and wife, in their home in Chicago, which, inferentially, at least, was owned by the appellant, and from the time he went away until after appellee's bill was filed, she continued to live in the same house. In the absence of proof to the contrary, the home so occupied by the appellee continued during all his absence to be appellant's home also. Most of that time was spent by appellant in Florida, where he was possessed of much valuable property, according to certain of the affidavits filed by appellee touching the extent of the appellant's possessions.

It is admitted by appellee that during the time of appellant's absence she was given credit for provisions and other necessaries of life, and although she states that he sent her no money while he was absent, she does not state that he refused any application made by her upon him for money for other purposes, nor that while he was absent she needed anything further.

On the other hand she admits that she received from

debtors of appellant the sum of $284.25 while he was absent.

She nowhere states that his going away was contrary to her desire, nor that she ever solicited him to return, but on the contrary it is not a violent inference that some part of the expenses of $1,274.61 for the pay of detectives in her employ was incurred in the unwifely attempt to discover some derelictions on his part during his absence which would afford her more certain grounds than she then had for a suit for separate maintenance.

When appellee filed her bill she was already provided by appellant with the home which had been deemed by them to be a suitable one for them to live together in, and she was living in it, undisturbed by appellant, and for anything that appears to the contrary he was paying or admitting his liability for all the bills that she incurred for her support there. At all events it does not appear that she was held responsible for such bills. A decree in her favor would give her but little more, and until she has shown some refusal by him, beyond a mere absenting himself from their home, to perform his marital obligation to suitably provide for her in their home, a court of equity should refuse to aid her in any unmeritorious effort to reside at his expense, *pendente lite*, in expensive hotels, attended by a personal maid, and subject him to great costs in solicitor's fees and detectives' services.

We conclude that the order appealed from was improvidently entered, and it is therefore reversed.