## James E. Stuart v. Le Roy Harris.

1. INSTRUCTIONS—*To Find for the Defendant, When Proper.*—When there is no evidence to support the issues made by the pleading, it is proper to instruct the jury to find for the defendant.

2. OFFICERS—*Taking Property from Prisoners.*—An officer may take from a prisoner any articles of property which it is presumable may furnish evidence against him, but money should not be taken unless it is in some way connected with the charge or proof against him, as he is thereby deprived of the means of making his defense.

3. SAME—*Duty in Making Arrests.*—The arresting officer, if he finds on the prisoner's body, or otherwise in his possession, either goods or money which he reasonably believes to be connected with the supposed crime as its fruits, or as supplying proofs relating to the transaction, may take and hold them to be disposed of as the court directs.

4. CRIME—*Money Found on a Prisoner as the Fruits of.*—It is a question of fact to be left to the jury, whether money found on a prisoner and taken from him by the law officers is the fruits of the crime for which he is convicted.

5. SAME—*Fruit of a Crime.*—By "fruit of a crime" is not necessarily meant the very property stolen.

6. FRUITS OF A CRIME—*Evidence to Determine.*—In determining the fact as to whether money found on the person is the fruit of a crime, evidence of the prisoner's pecuniary circumstances prior to the commission of the crime, the money he had in bank as well as deposits made by him after the commission of the crime, is competent and may be introduced.

7. EVIDENCE—*Pleas Not to be Used as.*—The general rule is that the plaintiff can not use one plea as evidence of the fact which the defendant disputes in another plea.

TROVER.—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1897. Reversed and remanded. Opinion filed March 29, 1897. Rehearing denied. Opinion on rehearing filed April 15, 1897.

GEORGE BOYD and JOHN C. BLACK, attorneys for appellant.

JESSE A. & HENRY R. BALDWIN, attorneys for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

By a motion for a new trial, and by instructions given for the appellee, the question is presented whether there is in the case any competent evidence of the cause of action upon which the appellee recovered; for, if there be no such evidence, the motion for a new trial should have been granted, and the instructions given upon the assumption that there was such evidence should not have been given.

The suit was by the appellee in trover against the appellant for money taken—as was said—by the appellant from the appellee.

The testimony to prove the taking of the money was by the attorney of the appellee, and is as follows:

" On the 24th day of February, 1894, the defendant took from the person of the plaintiff the four $100 bills, the thirteen $50 bills, and the thirteen $20 bills described in the declaration; the $100 bills were then and are now worth $100 each; the $50 bills were then and are now worth $50 each; the $20 bills were then and are now worth $20 each. The taking by the defendant was against the will of the plaintiff; the property was his and was in his possession, and no part of it has been returned to him by Captain Stuart, the defendant, or any one for him."

The first question and answer on cross-examination utterly destroyed the whole of that narrative as evidence. It might as well have been left unsaid. That question and answer were: " Mr. Baldwin, were you present when these bills were taken from the person of this man Harris ?  No, sir." The plaintiff—appellee—had rested his case, and had the appellant then asked the court to instruct the jury to find for the defendant, the instruction should have been granted; McGeoch v. Hooker, 11 Ill. App. 649; for the testimony in chief is subject to all the criticism which this court in Earle

v. Earles, 60 Ill. App. 360, and the Supreme Court in Fry-rear v. Lawrence, 5 Gilm. 325, made upon the verifications there referred to.

Then, did the cross-examination supply the total want of evidence in chief? All that we find which can be treated as tending that way is this: "Will you state when you were told by Captain Stuart that he took them from his person? Yes, sir. And where? In the United States court room in Chicago, in the old Government building, at various times; once, on the 15th day of March, 1894. I had a stenographer report it, and now have that report in my hands."

The attorney declined to permit the attorney of the appellant to look at that report.

The descriptions of the bills in the declaration, and in the quoted testimony in chief, are alike.

Now, leaving out of consideration the gross improbability that the appellant followed that description in any conversation with the attorney, it is quite certain that he did not say that the bills were those described in the declaration.

The original declaration was filed March 23d, eight days, and the amended May 17th, two months and two days, after the time of the conversation.

It is not proved—there is no evidence tending to prove—that the appellant took from the appellee the bills described, conversion of which is the gist of this action.

The appellant insists upon the want of proof, and it is impossible to sanction the attempt to present as personal knowledge what was at best only hearsay, however authentic the source whence it came.

The judgment is reversed and the cause remanded.

MR. JUSTICE WATERMAN.

Upon the trial of this case below, it appeared that the plaintiff, by means of post office orders by him forged, had obtained from the United States a large sum of money; that he has been convicted of such crime, and at the time of

the trial below was in the penitentiary. When arrested he was charged by the post office inspector, the defendant, with his crime and having by means of it obtained $3,100, and was asked to make restitution for the money he had by such means obtained; to which he replied that he had no money and could not make restitution. It substantially appears that he then had concealed upon his person the money thereafter taken from him by the United States marshal and the defendant, to recover which this action was brought.

The jury had a right to take into consideration his declaration that he had no money, in determining whether the money then on his person, and afterward taken from him, was his.

When searched by the United States marshal and the defendant there was found in the waistband of his pantaloons, stitched tightly between the two buttons to which his suspenders were attached, between four and five hundred dollars in money, and there was found on his right foot, underneath, between the stocking and his bare foot, money attached to the sole of the foot, and in his sock there were two or three small rubber bands, which were broken. The money was taken from his foot with some difficulty without tearing it, as it was sticking to the foot. The bills that were on his foot were stuck together, the upper bill was worn through on the ball of his foot, where the ball of the foot would rest, and also on the heel. The bill next to his foot was worn through. There was also an offensive odor on the bills from the smell of his feet. The plaintiff stated that the money had been where it was found for some time.

In Bishop on Criminal Procedure, Vol. 1, Sec. 210, the rule as to the conduct of an officer in making an arrest is laid down as follows:

"The officer * * * may take from the prisoner any articles of property which it is presumable may furnish evidence against him; but money, for example, should not be taken unless it be in some way connected with the charge

or proof against him, as he is thereby deprived of the means of making his defense."

Section 211: "The arresting officer should consider the nature of the accusation; then if he finds on the prisoner's person, or otherwise in his possession, goods or money which he reasonably believes to be connected with the supposed crime, as its fruits, or as the instrument with which it was committed, or as supplying evidence relating to the transaction, he may take them and hold them, to be disposed of as the court shall direct."

Manifestly, the prisoner being charged with the forgery of post office orders, and with having obtained by means thereof a large sum of money, it was the duty of the United States marshal and his assistants to take from the prisoner such money as they reasonably believed to be connected with the crime of which the prisoner was supposed to be guilty.

Whether the prisoner, the plaintiff, was, at the time of the commencement of this action, entitled to have the money so taken from him restored to him, is another question.

The contention of the plaintiff substantially is, that if one, by robbery or other crime, obtain a sum of money and deposit it in bank, he may immediately thereafter withdraw in other money the sum deposited, and that thereby the other money which thus comes into his possession becomes his, so that as against the person from whom he obtained the money he deposited, he may, in an action of trover, recover the money which he drew from the bank.

I do not think that the law goes to the extent claimed by the plaintiff. It is clear that in a court of equity a person having obtained property by criminal means will be held to hold the fruits of such offense as a trustee for the use and benefit of him from whom the property feloniously taken was obtained.

Golightly v. Reynolds, 1 Lofft's Reports, 89, was an action of trover brought for six silver table-spoons, 2 silver salts, 2 silver salt-spoons, one bank note of 20l., number 203, dated November 19, 1771, and 10 guineas in gold, all of which were the produce of a bank note of 50l. stolen by one Ferguson; the property for which trover was brought

was found on Ferguson when taken up, and produced in evidence at the Old Bailey by the plaintiff, the prosecutor, at the trial of said Ferguson, who was convicted of the theft of the said bank note of 50*l*. Lord Mansfield in deciding the case, said: " I don't see why trover is not good. The statute puts an indictment in the same case as a writ of appeal. The statute says it shall be restored, but leaves the party to his own way of recovery; since this statute, it gives him a particular remedy, but does not take away his other remedy." And there was judgment for the plaintiff.

In 1 Chitty's Criminal Law, 820, the rule as to stolen property is thus declared: "If the thing stolen has been converted into money, the owner may have the produce instead of the special chattel, for the case, though not within the words, is clearly within the equity of the statute." Reference is here had to the statute of 21 Henry VIII., providing for restitution of stolen goods. In the Queen v. The Corporation of the City of London, 96 Eng. Common Law, 509, it appeared that certain parties had been convicted of carrying away 500 pounds in weight of gold, and that certain Turkish bonds of the nominal value of 2,300*l*. were found in the possession of the convicted parties when apprehended, and that it was proved to the satisfaction of the court that one-sixth part of such bonds were bought with the proceeds of said felony. It was therefore ordered that such sixth part of the bonds should be given to the parties from whom the gold was stolen.

In Rex v. Rooney et al., 7 Carrington & Payne, 515–32, E. C. L. 735, where a person, a week after the commission of the offense, was apprehended on the charge of robbing A of 25*l*. in notes and 9*l*. in gold, and on the prisoner was found the sum of 12*l*. in gold, but none of it identified, the judge ordered 5*l*. to be restored to the prisoner in order to enable him to make his defense, saying that as a week had elapsed between the time of the robbery and the time of the apprehension of the prisoner, Rooney, the court might presume that a portion of the money in his possession was obtained from other sources.

So in Harris case, Noy, 128, the prisoner stole cattle and sold them in open market at Coventry; being apprehended by the sheriffs, they seized the money, and to the owner of the cattle was given restitution of the money. Croke, Judge, said this was usual at Newgate.

So, too, in Hanbury case, cited in Holiday v. Hix, Croke, Elizabeth, 661, where a servant took gold from his master and changed it into silver, it was held that the master should have restitution of the silver.

In Rex v. Powell, 7 Carrington & Payne, 640, 32 E. C. L. 638, the prisoner was convicted of selling a bill of exchange for 100*l.* and a considerable sum of money in specie, the property of Louis Davis; the prisoner had left a horse with a person at Redburn, in Hertfordshire, intending that it should be exchanged for another. There was no doubt that the horse was purchased with the prosecutor's money, as the prisoner had no money of his own; the horse was therefore ordered to be delivered to the prosecutor from whom the 100*l.* had been stolen.

In the present case it is, in my opinion, a question of fact to be left to the jury to determine whether the money found upon the person and taken from him was the fruit of the crime for which he was arrested and has been convicted; and in determining this fact, evidence of the prisoner's pecuniary circumstances prior to the commission of the crime, the money he had in bank, as well as deposits made by him after the commission of the crime, or other property obtained by him subsequent to the crime, may be introduced, that thereby may be ascertained whether the property now claimed by him is the fruit of the money he feloniously obtained from the United States government or otherwise, and if the money so taken from the prisoner is found to be the fruit of that which he criminally obtained from the United States, then he can not recover in this action. By fruit of crime is not necessarily meant the very property stolen.

MR. PRESIDING JUSTICE SHEPARD.

I concur with Mr. Justice Gary, that the case was not

properly proved, but there being no particular controversy but that the money in question was taken by the appellant from the appellee, I think the case ought to be considered upon its substantial merits.

And so looking at the record, I think the judgment ought to be affirmed, upon the ground that there is a total want of proof of the identity of the money that was taken from appellee's person with that stolen by him from the government, or that it was the direct fruits of the crime he committed.

While, therefore, I do not concur in a reversal of the judgment, I agree that the rule to be pursued on another trial is correctly stated by Mr. Justice Waterman in the concluding paragraph of his opinion.

MR. JUSTICE GARY.

So do I, if it shall be sufficiently proved, that Stewart acted under authority of, or with subsequent ratification by, the government.

MR. JUSTICE GARY ON PETITION FOR REHEARING.

The petition opens with the statement that this " case was decided, and the opinion of the court is upon grounds neither argued nor raised by counsel on either side," and cites Seaton v. Ruff, 29 Ill. App. 235, C. C. Ry. Co. v. Van Vleck, 40 Ill. App. 267; and E. St. L. S. Ry. Co. v. Stout, 47 Ill. App. 546, as authority that such practice is wrong.

It is true that there was no argument that can fairly be treated as such, of the quality of the evidence, and yet there was such mention of the objectionable character of that evidence as would put us in the wrong to overlook it.   Union Nat. Bk. v. Post, 55 Ill. App. 369.

Opinion on petition for rehearing.

The brief of the appellant says:

" We suppose that this court, if it shall hold to technicalities in this case, will hold to all the technicalities.   If the law is invoked by a thief to assist him in consummating his robbery because of technicalities *strictissimi juris*, as much

strictness may be employed in behalf of his victim. We do not invoke this rule. It has been invoked against the appellant. What is the result of its application?

There was a declaration filed, describing certain property alleged to have been lost. An amended declaration was subsequently filed describing certain other properties. The property described in the original declaration amounted to $1,310. That described in the amended declaration amounted to $3,930. All the pleas and subsequent proceedings were to and under the amended declaration, but when it came to the proof of the cause of action, the only proof made by the plaintiff, was by the lips of his lawyer testifying to an alleged statement of the defendant, and in which he described the property mentioned in the declaration, and not one word as to the property mentioned in the amended declaration, there was no evidence to sustain the amended declaration, and yet the verdict of the jury and the judgment of the court were in regard to the amended declaration. There should have been no judgment entered upon the testimony.

This may seem more nice than wise, but it is of the very essence of the plaintiff's case. The question of identity of property has been and is his sword and shield."

This is a very lame presentation of the objection—if it was so intended—but for us to disregard it, would be good ground of complaint on an afterthought by the appellant.

The petition says that the appellee had not " rested his case " as is stated in the original opinion.

The abstract says that at the close of his testimony in chief the attorney added "that is my case." Then follows: " The court : Is that all ? Mr. Baldwin : Yes, sir."

The petition says of the testimony : " It appears, though his testimony was given as of his own knowledge, he frankly stated that his knowledge was derived from the direct admissions of the defendant made *to him.*"

What does appear is, that next preceding the testimony in chief copied in the original opinion, is this:

" Jesse A. Baldwin, a witness on behalf of plaintiff, was sworn and testiffed in substance as follows:

Stuart v. Harris.

My name is Jesse A. Baldwin; am a practicing attorney, and have been practicing in Chicago for about twenty years. I know the plaintiff and defendant in this suit. On the 24th day of February, 1894, the defendant took from the person of the plaintiff and against his will—

Mr. John C. Black: I object to it. Were you present?

The Court: You will state only those things, Mr. Baldwin, that you personally know.

Mr. Baldwin: I will state more than that. I will give statements made by defendant, and I think your honor will say, if I have it direct from the defendant himself, it is admissible.

The Court: You may state anything that the defendant told you. Go on with your statement.

Mr. John C. Black: May I ask a question? I ask if he was present.

The Court: It is not your turn to ask him. I have notified him not to say anything that he does not know personally or that the defendant did not tell him. Go on, Mr. Baldwin."

The witness did not follow with any statement that the appellant had told the witness anything, but with a positive statement of the happening of events, of which he never had any knowledge.

It is urged that a special plea, put in by the appellant, justifying the taking of the moneys mentioned in the declaration, was a binding admission of the taking, citing Pankey v. Raum, 51 Ill. 88, 91; Atkinson v. Linden Steel Co. 138 Ill. 187, 192; Soaps v. Eichberg, 42 Ill. App. 375, 386; Beach v. Jeffrey, 1 Ill. App. 283, 285; The People v. Gray, 72 Ill. 343, 346; Monroe v. Chaldeck, 78 Ill. 429, 431.

Of these cases only Beach v. Jeffrey and Monroe v. Chaldeck are cases of pleas, and they are pleas of tender, which stand upon a different footing from all other pleas; not because of the admissions in the pleas, but because by bringing the money into court, as he must (Graham's Practice, 541), the defendant estops himself and confers upon the plaintiff the right to take it out. Cox v. Robinson, 2 Strange, 1027; LeGrew v. Cook, 1 P. & P. 332.

The general rule is that "the plaintiff can not use one plea as evidence of the fact which the defendant disputes in another plea." 1 Ch. Pl. 589, note 1, Ed. 1883; Schwartz v. Sutherland, 51 Ill. App. 175.

The general issue in, denied everything.

In the petition it is said that "Mr. Baldwin's testimony is unequivocal to the effect that the description of the bills was correct, and was given to him by defendant Stuart."

We are referred to no place in abstract or record in support of that statement.

The suggestion implying that outside of the record there is a letter relating to this case is useless.

The petition is denied.

MR. JUSTICE WATERMAN.

In a petition for a rehearing filed by appellant, it is stated that appellee "was not an assistant to the arresting officer in any sense other than would be applicable to any other of the four persons who came through on the train with the prisoner."

We think that all persons who were of the marshal's party bringing the prisoner from Buffalo, may be considered as his assistants. The undisputed testimony is that in the presence of Inspector Leatherman and Deputy United States Marshal Colt, "as assisted by them," appellee "was searched;" that appellant thus found certain money concealed in the prisoner's stocking, etc.; that appellant gave to the United States marshal a receipt for the same.

It is clear that appellant, in searching the prisoner and taking money from him, acted as an assistant to the marshal.

It was the duty of the marshal to search the prisoner, and this he could do by assistants.

In searching a female prisoner the marshal does so through the aid of female assistants, who usually do so out of his presence, but the act is his, and the assistants no more liable to respond for trespass to the person of the prisoner than is United States Marshal Colt in the pres-

ent instance.   The fact that appellant was, when he aided
the marshal in searching the prisoner, a post office in-
spector, did not change the character of his act or forbid
his rendering such assistance.   A woman, although a book-
keeper or post office inspector, might assist the marshal in
searching a female prisoner.